McCULLOCH DEVELOPMENT
CORP., Plaintiff,

v.

Catherine C. WINKLER, et
al., Defendants.

Civ. A. No. 81–1465.

United States District Court,
District of Columbia.

Jan. 15, 1982.

Barbara J. Finer, Jeffrey M. Frost, Levitan, Ezrin, West, Weinstein & Kerxton, Chevy Chase, Md., for plaintiff.

James C. Wilkes, Jr., Alexandria, Va., for defendants.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

The instant action is before the court on the defendants' motion to dismiss, as opposed by the plaintiff, and plaintiff's unopposed motion for summary judgment. Jurisdiction exists pursuant to 28 U.S.C.A. § 1331 (Supp.1981).

On July 17, 1980, defendants and the Washington House Tenants' Association, Inc. entered into a written agreement for the sale of certain real property located in Washington, D. C. The Tenants' Association, in turn, assigned all of its rights under the contract to the Washington House Limited Partnership. Plaintiff is the sole general partner of Washington House Limited Partnership. Neither plaintiff's standing to bring the instant action nor the assignment of rights under the contract is contested by the defendants.

The contract between defendants and plaintiff's assignors provided that defendants were to convey the property for a price of $2,490,000.00 and various other promises. The agreement was not a form contract, but rather one drafted by counsel for the sellers-defendants. It provided, among other things, that time was of the essence to the defendants, that the defendants bore the risk of loss until delivery of the deed, and that the agreement constituted the entire contract between the parties. In addition, the agreement provided that:

> With respect to Winkler's Premises, examination of title, tax certificate, conveyancing, notary fees, D. C. deed recordation tax, all settlement charges, and all recording charges are to be at the sole cost and expense of the Association, provided, however, that if upon examination the title should be found defective and is not remedied as aforesaid, Winkler hereby agrees to pay the cost of the examination of the title.

The "Association" referred to is, of course, plaintiff's assignor, and "Winkler" denotes the collective defendants.

After the making of the contract, but before the final closing and transfer of the property, the District of Columbia Code was amended to impose a one percent (1%) transfer tax on any property transferred after September 13, 1980. D.C.Code § 47-903 provides:

> (a) There is imposed on each transferor for each transfer at the time the deed is submitted to the Mayor for recordation a tax at the rate of 1 percent of the consideration for such transfer: Provided, that in any case where application of the rate of tax to the consideration for the transfer results in a total tax of less than $1 the tax shall be $1.
>
> (b) Each such deed shall be accompanied by a return, under oath, in such form as the Mayor may prescribe, executed by all the parties to the deed, setting forth the consideration for the deed, the amount of tax payable, and such other information as the Mayor may require.
>
> (c) The transferor in a transfer shall have responsibility for payment of the taxes imposed by this section: Provided, however, that if the transferor should fail to make payment the transferee shall be jointly and severally liable with the transferor for payment of said taxes. Neither the United States nor the District of Columbia governments shall be subject to liability for the tax imposed under this section.
>
> (d) The Mayor is authorized to prescribe, by regulation, reasonable extensions of time for the filing of the return required by subsection (b) of this section.

According to the terms of the statute, the seller of the property was the one given responsibility for payment of the tax, even though the District of Columbia was given

the additional powers to look to the buyer in the event the seller failed to pay.

The final closing between defendants and plaintiff's assignor did not take place until April 23, 1981. At settlement, however, the defendants refused to pay the transfer tax. Defendants do not dispute this fact.[1] Without payment of the tax, the transfer could not lawfully be completed. Plaintiff, therefore, paid the tax, alleging that its commitments for financing and construction would have been severely disrupted had the transfer not been consummated that day. The transfer was then completed, and neither party has charged the other with a failure to meet its contractual commitments, except for the instant action by plaintiff for reimbursement of the amount of the tax, $24,900.00, and costs.

■ By refusing to pay the transfer tax imposed upon them defendants breached their contract with plaintiff's assignors. A statutory duty imposed after the making of a contract does not relieve a party of its contractual obligations, except when the change in law renders the contract unenforceable for impossibility or illegality. Defendants were given the responsibility to pay the transfer tax by D.C.Code § 47–903. Their refusal to comply with that responsibility prevented the transfer of the property as they had agreed, and was thus a breach of contract.

■ Defendants were, of course, free to transfer the burden of the tax to anyone else who agreed to pay it for them. Their first claim is that, even before settlement, the parties had agreed that plaintiff would pay the transfer tax. Defendants urge that plaintiff had voluntarily shouldered the transfer tax burden when it contracted to pay all "examination of title, tax certificate, conveyancing, notary fees, D.C. deed recordation tax, all settlement charges, and all recording charges" in the July 17, 1980, contract provision quoted above. As plain-

tiffs correctly point out, however, the mere fact that the transfer tax imposed by D.C. Code § 47–903 is paid at the time of recordation does not make it a recordation tax. Indeed, the recordation tax to which the July 17, 1980, contract refers is that imposed by D.C.Code § 45–923 which is a tax completely separate from—and imposed in addition to—the transfer tax at issue here.

■ Since the transfer tax did not become law until after the contract was completed, it is understandable that defendants would not have included a contractual provision for a tax not yet in existence. No provision of the July 17, 1980, contract, however, is broad enough to include any transfer tax which might be imposed between the making of the contract and final closing. In addition, the contract did provide contingency plans for then-pending D.C. Condominium Law 3–204. The transfer tax, also pending at the time of the contract, was not mentioned. Even if there were a provision in the contract so ambiguous as to conceivably embrace the transfer tax, it must be noted that counsel for the sellers-defendants drafted the contract, and thus any ambiguity must be construed against the defendants. Hence, the defendants' statutory burden to pay the transfer tax was not shifted by the July 17, 1980, contract.

■ Defendants' second claim is that, regardless of the correct interpretation of the July 17, 1980 contract with respect to the transfer tax, the plaintiff voluntarily agreed to pay the tax at closing in order to acquire the property immediately rather than wait for resolution of the transfer tax dispute. Accordingly, defendants view plaintiff's payment as a type of accord and satisfaction, which was voluntarily given to settle the parties' dispute concerning construction of the contractual language. Defendants' reasoning in this respect is misguided. When defendants refused to pay

1. Plaintiff's statement of material facts not at issue accompanying its motion for summary judgment states: "At settlement on the Property on April 23, 1981, the Defendants refused to pay the 1% D. C. Transfer Tax." Defendants have not filed a response to the plaintiff's motion, despite being due more than two months ago. Plaintiff's statement of the facts, then, shall be accepted as true.

the tax, as is not disputed, the automatic result of that action was the inability of the parties to complete the transfer as agreed. Defendants were thus in breach of the contract. Plaintiff's action was in response to defendants' breach, not an offer to settle some dispute. Plaintiff's payment of the transfer tax in order to avoid throwing into disarray its plans for financing and construction was a valid response to defendants' breach.[2] In this age of fluctuating interest rates and construction costs, a paramount consideration for any buyer must be its agreements with its lenders and contractors. Indeed, defendants acquiesced in this course of action, for the transfer was consummated.

In short, defendants knew or should have known that their refusal to pay the transfer tax placed them in breach of their contractual obligations. Hence, they knew or should have known that plaintiff's action was a response to that breach, not an offer of settlement. Defendants cannot, therefore, now claim accord and satisfaction.

The amount of the transfer tax paid, i.e. the amount by which plaintiff was damaged, is not disputed.

It is therefore, by the Court, this 15th day of January, 1982

ORDERED that plaintiff's motion for summary judgment be and it hereby is granted, and it is

FURTHER ORDERED that defendants' motion to dismiss be and it hereby is denied.

An appropriate judgment accompanies this Order.

## JUDGMENT

Judgment in the amount of $24,900.00 together with costs and interest from April 24, 1981, is hereby entered in favor of plaintiff McCulloch Development Corp., and against defendants Catherine C. Winkler, James C. Wilkes, Jr., Trustee, Harold D. Winkler, Trustee, and Robert C. Gilkison, Trustee, jointly and severally.

2. A buyer's payment of a tax for which the seller is responsible followed by an action to recover the amount paid, has long been recog-

nized as a valid response to a seller's breach of contract. *Machen v. Yost*, 54 App.D.C. 261, 296 F. 1008 (1924).